UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


BANNER LUMBER COMPANY, INC.

        Plaintiff,

                                    Case number 07-13180

v.

                                    Honorable Julian Abele Cook, Jr.

INDIANA LUMBERMEN'S MUTUAL
INSURANCE CO.,

        Defendant.



ORDER

On July 6, 2007, the Plaintiff, Banner Lumber Company, Inc. ("Banner Lumber") filed a

complaint against the Defendant, Indiana Lumbermen's Mutual Insurance Co. ("Indiana

Lumbermen") in the Wayne County Circuit Court of Michigan for its alleged breach of the

parties' insurance contract. On July 31st, Indiana Lumbermen caused the case to be removed to

this Court on the basis of its diversity jurisdiction.

On February 25, 2008, Banner Lumber filed the first of two motions that are currently

under review by the Court; namely, a request for an order which would declare that a jury

determination, if any, of a property loss from an ongoing criminal scheme constitutes a single

"occurrence" for the purposes of the parties' insurance policy. In the second motion that is now

before the Court was filed by Indiana Lumbermen on May 16th.  In its application for relief,

Indiana Lumbermen seeks the entry of a summary judgment, contending that there are no

genuine issues of a material fact to be resolved in this case. On August 5, 2008, the Court

1

conducted a hearing, during which both parties were given an opportunity to present arguments in support of their respective positions regarding the two pending motions.

For the reasons that have been set forth below, the Court will grant the relief sought by Banner Lumber, and, at the same time, the request by Indiana Lumbermen for the entry of a summary judgment will be denied.

## I.

Banner Lumber operates a lumber business on 12.6 acres at 12627 Greenfield Road in Detroit, Michigan. Between April 1, 2005 and April 1, 2006, Banner Lumber maintained an insurance policy that had been issued by Indiana Lumbermen which included the following language:

ADDITIONAL PROPERTY NOT COVERED OR SUBJECT TO LIMITATIONS

* * *

9. Missing Property - "We" do not cover missing property when the only proof of loss is unexplained or mysterious disappearance, or shortage discovered on taking inventory, or other instance where there is no physical evidence to show what happened to the property. . . .

HOW MUCH WE PAY

* * *

2. Deductible - "We" pay only that part of "your" loss over the deductible amount stated on the "declarations" in any one occurrence. The deductible applies to the loss before application of any coinsurance or reporting provisions.

(Def.'s Mot. for Summ.J., at 6-7.)

During the evening of January 10, 2006, the president of Banner Lumber, Stuart Epstein, took a friend to see his business enterprise. As the two men approached the lumberyard, he saw a pickup truck that had been parked on a driveway near one of its gates. He also observed (1) some "unknown materials" inside the truck, (2) two men with "beanie hats" next to the vehicle, (3) the lumberyard security guard standing inside the closed gate, and (4) a pile of "4 x 8 wood" next to a hi-lo and the security guard. (Pl.'s Mot., Ex. A, Epstein Deposition at 15:59.) As Epstein pulled closer to the pick up truck, the two men drove away. He followed them long enough to read the license plate on the fleeing vehicle. (Epstein Dep. at 16:63.) Upon returning to the lumberyard, Epstein questioned the security guard who responded, "They got in. I don't know." According to Epstein, the security guard falsely told him that he had placed an emergency call to the Detroit Police Department to report the incident. (*Id.*, at 17:66-67.) On the following day, Epstein surveyed the lumberyard with his business manager, Jack Nichol, who was instructed to conduct an immediate inventory of the property within the gates of the business. Following the completion of his inventory, Nichol concluded that a substantial quantity of lumber was missing. (*Id.*, at 18:72.)

On September 27, 2006, Banner Lumber submitted a "Sworn Statement in Proof of Loss" claim in the amount of $979,219.50 to Indiana Lumbermen.[1] (Pl.'s Mot., Ex. C.) In making its claim, Banner Lumber asserts that its loss was (1) based on a continuing theft that had occurred over the course of several months, and (2) caused by the "[t]heft by person or persons unknown to the insured." (Pl.'s Mot., Ex. C.)

Upon its receipt of this claim, Indiana Lumbermen asked its forensic accountant, Matthew W. Woodcock, CPA, to analyze the Banner Lumber inventory documents. As a result of his evaluation,

---

[1]The amount was minus a listed deductible of $2,000. (Pl.'s Mot., Ex. C.)

Woodcock determined that the claimed loss was the result of Banner Lumber's (1) lack of inventory control as well as other defects within its inventory documentation, and (2) inaccuracy in its recitation of the facts which ostensibly established the alleged ongoing criminal activity. As a supplement, Indiana Lumbermen submitted a statement from its private investigator and former foreman of the lumberyard, Scott Gratopp, which supported Woodcock's conclusion. As a result of these analyses, Banner Lumber's claim was denied.

## II.

Under Michigan law, the fundamental principle for the construction and interpretation of insurance contracts, as with all contracts, is that the intentions of the parties should control. *Auto-Owners Ins. Co. v. Churchman*, 440 Mich. 560 (1992); *Prestige Cas Co. v. Michigan Mut. Ins. Co.*, 99 F.3d 1340 (6th Cir. 1996). In determining whether an insurer must indemnify the insured, this Court is guided by the Michigan Supreme Court which opined that a court, under these circumstances, should examine the language of the insurance policy and interprets its terms in accordance with well-established principles of construction. *Frankenmuth Mut. Ins. Co. v. Masters,* 460 Mich. 105, 111 (1999).

In Michigan, the construction and interpretation of an insurance contract is a question of law for the court to determine. *Morley v. Auto. Club of Michigan,* 458 Mich. 459, 465 (1998). A fundamental rule of construction is that the "insurance contract must be enforced in accordance with its terms."*Henderson v. State Farm,* 460 Mich. 348 at 354. In determining whether a term within an insurance policy is applicable, a court is encouraged to determine whether the policy is clear and unambiguous. *Upjohn Co. v. New Hampshire Ins. Co.*, 438 Mich.197, 206 (1991). If it is clear and unambiguous, the term "must be taken and understood in [its] plain, ordinary and

popular sense." *Michigan Mut. Ins. Co. v. Dowell*, 204 Mich. App. 81 (1994), *Equitable Life Assurance Soc'y v. Poe*, 143 F.3d 1013, 1016 (6th Cir. 1998). However, it should be noted that such a term is "not open to construction and must be enforced as written." *Cochran v. Ernst & Young*, 758 F.Supp. 1548, 1554 (E.D. Mich. 1991).

According to Michigan law, "[a]n insurance policy is ambiguous if it is susceptible to two different reasonable interpretations." *Comerica Bank v. Lexington Ins. Co.*, 3 F.3d 939, 942 (6th Cir.1993). A contract term is ambiguous when its terms are reasonably and fairly susceptible to multiple understandings and meanings. *Equitable Life Assurance Soc'y*, 143 F.3d at 1016. However, a mere disagreement between the parties as to the meaning of a term does not constitute an ambiguity. *Id*. Whether or not an ambiguity exists with respect to a provision within a contract is a question of law for a court to decide. *Id*.

Finally, it is well-established in Michigan courts that an ambiguous insurance contract provision must be construed against the drafting insurer and in favor of the insured. *Wilkie v. Auto-Owners Ins. Co*, 469 Mich. 41, 61 (2003). In 1991, the Michigan Supreme Court stated that it will "strictly construe against an insurer exceptions in an insurance policy that preclude coverage for the general risk." *Vanguard Ins. Co. v. Clarke*, 438 Mich. 463, 475 (1991). On the other hand, courts should not render a technical or a strained meaning to a contract. Moreover, a court should not attempt to rewrite the contractual language for the parties. *Wilkie v. Auto-Owners Ins. Co.*, 245 Mich 521, 528 (2001); *Comerica Bank v. Lexington Ins. Co.*, 3 F.3d 939, 943-44 (6th Cir. 1993).

III.

Here, Banner Lumber argues in its motion that if a loss is determined to have been caused by an ongoing criminal scheme, it should be classified as a single "occurrence" with respect to an

insurance policy that fails to define the term. On the other hand, Indiana Lumbermen counters with the argument that an "occurrence" only means "a single act." There are no known reported decisions within the Sixth Circuit or in the State of Michigan that deal specifically with the application of an insurance clause which purport to deal with multiple intentional acts by a third party. Thus, it is the suggestion of Indiana Lumbermen that the Court adopt the definition from the American Heritage College Dictionary which states that an "occurrence" is an "act or instance of occurring," or an "event." (Def.'s Mot. Summ.J. at 12.) On the other hand, an examination of Black's Law Dictionary defines "occurrence" as "[s]omething that happens or takes place; specif[ically], an accident, event, *or continuing condition* that results in personal injury or property damage that is neither expected nor intended from the standpoint of an insured party." (8th ed. 2004) (emphasis added). It also provides that "[t]his specific sense is the standard definition of the term under most liability policies." *Id.*

In a separate part of the contract, the parties' insurance policy defines "occurrence" as "all loss caused by, or involving, . . . whether the loss is the result of *an act or series of related acts.*"[2] (Def.'s Resp., Ex. 6, p. 15.) (emphasis added). When "interpreting an insurance policy, Michigan law requires the courts to look at the policy as a whole, and to give meaning to all of its terms . . . . . Conflicts among clauses should be harmonized." *Advance Watch Co., Ltd. v. Kemper Nat. Ins. Co.*, 99 F.3d 795, 800 (6th Cir. 1996) (quoting *Fresard v. Michigan Millers Mut. Ins. Co.*, 327 N.W.2d 286, 288-89 (Mich. 1982)).

---

[2]This definition is found within the "Employee Dishonesty Coverage Declaration," which is a provision of the parties' insurance policy that is not relevant to Banner Lumber's claimed loss. However, it should be noted that this is the only place in which the policy elaborates upon the intended meaning of "occurrence."

With recognition that these interpretations of "occurrence," which have been advanced by the parties in support of their respective positions, are reasonable, the Court concludes that the provision within the parties' insurance policy relating to property coverage is ambiguous. When term or a provision within an insurance policy is ambiguous, the Court must construe it against the drafter - in this case, Indiana Lumbermen. Thus, it is appropriate for the Court to issue a declaration which states that *if* the jury finds that Banner Lumber's loss was caused by an ongoing criminal enterprise, then it (i.e., the loss) constitutes one "occurrence" under the insurance policy.

III.

In 1986, the Supreme Court opined that "[o]ne of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupportable claims or defenses ...." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). At the same time, the language within Federal Rule of Civil Procedure 56(c) provides that a motion for a summary judgment should be granted only if a party "show[s] that there is no genuine issue as to any material fact and that [it] is entitled to a judgment as a matter of law." The burden is on the movant to demonstrate the absence of a genuine issue of a material fact. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In assessing a summary judgment motion, the Court must examine any pleadings, depositions, answers to interrogatories, admissions, and affidavits in a light that is most favorable to the non-moving party. Fed. R. Civ. P. 56(c); *see United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *Boyd v. Ford Motor Co.*, 948 F.2d 283, 285 (6th Cir. 1991); *Bender v. Southland Corp.*, 749 F.2d 1205, 1210-11 (6th Cir.1984). Thus, it is the responsibility of the Court to determine "whether . . . there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477

U.S. at 250.

A dispute is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. Hence, a summary judgment must be entered if (1) the submitted evidence in support of the dispositive motion clearly suggests that the contested matter is "so one-sided that [the proponent] must prevail as a matter of law," *Id.* at 252, or (2) the opponent fails to present evidence that is "sufficient to establish the existence of an element essential to its case, and on which it will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322. Upon such a showing, the non-moving party must act affirmatively in order to avoid the entry of a summary judgment. Fed. R. Civ. P. 56(e). More importantly, it should be noted that the mere presentation of a scintilla of supporting evidence is insufficient to offset an otherwise sufficiently submitted request for dispositive relief. *See Anderson*, 477 U.S. at 252 (quoted in *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989)). Indeed, "[i]f the evidence is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted).

## IV.

Turning to the second motion before the Court, Indiana Lumbermen contends that it is entitled to a summary judgment because (1) the sworn admissions by Banner Lumber's officers and representatives contradict any showing of the existence of a genuine dispute, and (2) all claimed inventory losses prior to January 10, 2006 should be considered to be "missing property" due to the lack of physical evidence, which falls under an exclusion within the policy that states:

> "We" do not cover missing property when the only proof of loss is unexplained or mysterious disappearance, or shortage discovered on taking inventory, or other instance where there is no physical evidence to show what happened to the property.

(Df.'s Resp., Ex. 6, at 10.)

In its opposition papers, Banner Lumber contends that Epstein's recitation of the acts and events provide a sufficiency of evidence that, at the very least, create a genuine issue of a material fact which would justify a rejection of the Indiana Lumbermen's quest for a summary judgment. Banner Lumber argues that the security guard whom Epstein found standing just inside the closed gate near the two thieves during the January 10, 2006 incident is supportive of its argument that its losses should be attributed an ongoing criminal enterprise with the other persons. In his police report, Epstein stated that "someone had to [sic] had to have used a hi-lo and moved a pallet of wood to the gate and then used the pallet to help slide the wood under the gate." (Pl.'s Mot., at 4-5, 6 n.3.)

The insurance policy makes it clear that Banner Lumber was covered for the physical loss of inventory, but not for that which was "missing." (Df.'s Resp., Ex. 6, p. 10.) It is undisputed that Banner Lumber suffered a substantial decline in its inventory which was in excess of the deductible coverage within the policy. However, the parties disagree as to whether Indiana Lumbermen must cover any inventory loss outside of that which was directly assignable to the theft on January 10, 2006. Whether Banner Lumber's losses qualify as "missing property" is a question of fact. The incident of January 10, 2006 may indicate that those losses which were discovered on the date following the theft have a common origin. On this issue, Banner Lumber has offered reasonable - and presumptively, admissible - evidence in support to satisfying the physical proof requirement.

However, the Court, in its assessment of a party's request for the entry of a summary judgment, must look to determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *See Anderson*, 477 U.S. at 251-252. Here, the moving party has not met the burden of proving

that no genuine issues of a material fact exist. *See Celotex Corp.*, 477 U.S. at 323.

IV.

Accordingly, for the reasons that have been set forth above, the Court (1) grants Banner Lumber's motion for a declaration regarding the definition of the term "occurrence," and (2) denies Indiana Lumbermen's motion for summary judgment.


IT IS SO ORDERED.


Dated: <u>September 8, 2008</u>       <u>s/ Julian Abele Cook, Jr</u>
   Detroit, Michigan       JULIAN ABELE COOK, JR.
               United States District Court Judge


<u>Certificate of Service</u>

I hereby certify that on September 8, 2007,  I electronically filed the foregoing with the Clerk of the Court using the ECF system, and I further certify that I mailed a copy to the non-ECF participant(s).

            <u>s/ Kay Alford</u>
            Courtroom    Deputy    Clerk