UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BANNER LUMBER COMPANY, INC.,

Plaintiff,

v.

INDIANA LUMBERMEN'S MUTUAL INSURANCE CO.,

Defendant.

Case No. 07-13180
Honorable Julian Abele Cook, Jr.

ORDER

In this case, the Plaintiff, Banner Lumber Company, Inc., complains that the Defendant, Indiana Lumbermen's Mutual Insurance, Co., breached the parties' insurance contract.[1] On August 5, 2008, the Court conducted a hearing in which the parties presented arguments pertaining to (1) the Plaintiff's request for an order which sought a judicial declaration that a property loss from an ongoing criminal scheme constitutes a single "occurrence" under the parties' insurance contract, and (2) a motion in which the Defendant sought to obtain the entry of a summary judgment because, in its opinion, there is no genuine issue of a material fact to be resolved in this lawsuit. Following the hearing, the Court, in an order dated September 8, 2008, (1) granted the Plaintiff's request and (2) denied the Defendant's motion.

[1]This case was originally filed in the Wayne County Circuit Court of Michigan by the Plaintiff. However, on June 31, 2007, the Defendant caused the action to be removed to this federal court on the basis of its diversity jurisdiction under 28 U.S.C. §1332.

I.

On June 8, 2009, the Defendant filed a renewed motion for summary judgment which is now pending before the Court. During all of the times that are relevant to this controversy, the Plaintiff owned and maintained a lumber business on 12.6 acres at 12627 Greenfield Road in Detroit, Michigan. Between April 1, 2005 and April 1, 2006, the Plaintiff was insured under an insurance policy that had been issued by the Defendant which included the following language:

> PROPERTY COVERED
>
> "We" cover direct physical loss to covered property at "covered locations" caused by a covered peril . . . .
>
> HOW MUCH WE PAY
>
> * * *
>
> 2. Deductible - "We" pay only that part of "your" loss over the deductible amount stated on the "declarations" in any one occurrence. The deductible applies to the loss before application of any coinsurance or reporting provisions.
>
> ADDITIONAL PROPERTY NOT COVERED OR SUBJECT TO LIMITATIONS
>
> * * *
>
> 9. Missing Property - "We" do not cover missing property when the only proof of loss is unexplained or mysterious disappearance, or shortage discovered on taking inventory, or other instance where there is no physical evidence to show what happened to the property. . . .

(Def.'s First Mot. Summ. J. at 10). In addition, one of the Defendant's insurance policy declarations provided that any losses, which are attributable to "employee dishonesty," have a maximum recovery amount of $100,000.

The claims now pending before the Court spawn from an event that was witnessed by Plaintiff's president, Stuart Epstein, on the night of January 10, 2006. According to Epstein, he had driven to his company's lumberyard with a friend when they observed several individuals, all of whom were in the process of illegally loading lumber onto a truck. When the thieves hastily drove away in an ostensible effort to avoid apprehension, Epstein followed them briefly and was able to

obtain the license plate number of their vehicle but not the identity of the suspected thieves.

At the time of the January 10th incident, an employee of the Plaintiff who served as a security guard, Jerry Wells, disavowed any knowledge or awareness of the theft:"They [the thieves] got in. I don't know." It is Epstein's contention that Wells falsely told him that he had placed an emergency call to the Detroit Police Department to report the incident. On the following day, Epstein surveyed the lumberyard with his business manager, Jack Nichol, who was instructed by him to conduct an immediate inventory of the property within the gates of the business. Following the completion of his review of the inventory, Nichol concluded that a substantial quantity of lumber was missing.

On September 27, 2006, the Plaintiff submitted a "Sworn Statement in Proof of Loss" claim in the amount of $979,219.50 to the Defendant.[2] In making its claim, the Plaintiff asserts that its loss was (1) caused by a continuing theft that had occurred over the course of several months and (2) perpetrated "by [a] person or persons unknown to the insured."

This "Proof of Loss" submission prompted the Defendant to conduct an analysis (through a forensic accountant, Matthew Woodcock) of the Plaintiff's inventory documents. Following his evaluation, Woodcock concluded that the claimed loss was the result of the Plaintiff's (1) lack of inventory control as well as other defects within its inventory documentation, and (2) inaccuracy in its recitation of the facts (i.e., allegations of an ongoing criminal activity). Woodcock's assessment was supplemented and supported by Scott Gratopp, a private investigator and a former lumberyard foreman who conducted his own evaluation of the events arising out of the January 10th incident. On the basis of these two conclusions, the Defendant denied the Plaintiff's claim. This lawsuit followed.

---

[2]The amount was minus a listed deductible of $2,000.

II.

"One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupportable claims or defenses . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Federal Rule of Civil Procedure 56(c) provides that a motion for a summary judgment should be granted when "there is no genuine issue as to any material fact" and "the movant is entitled to judgment as a matter of law." A dispute is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The movant bears the burden of proving the lack of a genuine issue of a material fact. *Id*.

The Court must examine all facts in the light that is most favorable to the non-moving party. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *Boyd v. Ford Motor Co.*, 948 F.2d 283, 285 (6th Cir. 1991); *Bender v. Southland Corp.*, 749 F.2d 1205, 1210-11 (6th Cir.1984). It is the ultimate responsibility of the Court to determine if any genuine disputes of fact exist. *Anderson*, 477 U.S. at 250. If the non-moving party's claim would fail under the law, even after assuming the facts are as the non-moving party posits them to be, a summary judgment must be entered. *Celotex Corp.*, 477 U.S. at 322. More than a mere scintilla of supporting evidence is required to defeat a meritorious motion for summary judgment. *See Anderson*, 477 U.S. at 252 (quoted in *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989)). Evidence must be more than "merely colorable" to withstand the entry of a summary judgment. *Anderson*, 477 U.S. at 249-50 (citations omitted).

III.

In support of its renewed motion for summary judgment, the Defendant contends that, on the

basis of the information obtained since the Court addressed an earlier request for dispositive relief under Fed.R.Civ.P. 56, the Plaintiff cannot prove any losses which exceed the $2,000 deductible during the policy period. The Plaintiff disagrees.

Under Michigan law, the fundamental principle for the construction and interpretation of insurance contracts, as with all contracts, is that the intentions of the parties should control. *See Auto-Owners Ins. Co. v. Churchman*, 440 Mich. 560, 566 (1992); *Prestige Cas Co. v. Michigan Mut. Ins. Co.*, 99 F.3d 1340, 1350 (6th Cir. 1996). The Michigan Supreme Court has held that a court should examine the language of an insurance policy and interpret its terms in accordance with well-established principles of construction. *Frankenmuth Mut. Ins. Co. v. Masters,* 460 Mich. 105, 111 (1999). A fundamental rule of construction is that the "insurance contract must be enforced in accordance with its terms." *Henderson v. State Farm,* 460 Mich. 348, 354 (1999). "[T]he court may not read ambiguity into a policy where none exists. Where ambiguity is found, however, the court must construe the term in the manner most favorable to the insured." *CTSC Boston v. Cont'l Ins. Co.*, 25 Fed. Appx. 320, 324 (6th Cir. 2001) (citations omitted). Moreover, ambiguity only exists where a provision of the contract is susceptible to different reasonable interpretations. *Id.* The construction and interpretation of an insurance contract is a question of law for the court to determine. *Morley v. Auto. Club of Michigan,* 458 Mich. 459, 465 (1998).

In 1993, the Michigan Court of Appeals instructed that "[i]n construing an insurance contract, courts must first determine whether coverage exists." *Libralter Plastics v. Chubb Group of Ins. Cos.*, 199 Mich. App. 482, 486 (1993) (citing *Allstate Ins. Co. v. Freeman*, 453 Mich. 656, 668 (1989)). Thereafter, the next step is for the court to determine whether an exclusion within the insurance contract precludes coverage. *Id.*

Here, the parties concur that the Plaintiff claims to have suffered at least $544,190 in inventory loss during the policy period.[3] The operative language within the policy states that the Defendant "cover[s] direct physical loss to covered property at 'covered locations' caused by a covered peril." The parties do not dispute that theft falls within the category of a "covered peril." However, assuming, *arguendo*, that the Plaintiff's loss is covered under the policy, the Court believes that there is an unambiguous exclusionary clause in the contract which (1) is applicable to the Plaintiff's claim and (2) relieves the Defendant from assuming this liability.

In its pursuit of a summary judgment, the Defendant maintains that the Plaintiff's loss is subject to the "Missing Property" exclusion. It argues that there is no existing physical evidence which supports the Plaintiff's theory that its loss is attributable to an ongoing criminal enterprise. The Defendant also asserts that Epstein's allegations (i.e., the thieves and the security guard were part of a larger criminal scheme) are conclusory and mere conjecture which are insufficient to overcome the "Missing Property" provision within the policy. It submits that the Plaintiff's only proof of loss is based on the theft on January 10, 2006, which totals only $750, less than the policy's deductible. On the other hand, the Plaintiff steadfastly believes that the evidence as a whole supports its contention which attributes its loss to an ongoing criminal enterprise.

Although "circumstantial evidence may be sufficient to establish a case," the party who opposes a motion for summary judgment must present evidence that amounts to more than mere "conjecture and speculation" to establish the existence of a genuine issue of a material fact. *Libralter Plastics*, 199 Mich. App. at 486 (citations omitted). A conjecture is defined as an

---

[3] The Plaintiff asserts that its loss amounts to $981,219.50. However, the Defendant does not agree, contending that the loss totals $544,190.

explanation that, although consistent with the facts in evidence, is not "deducible from them as a reasonable inference." *Id.* (citing *Kaminski v. Grand Trunk W R Co.*, 347 Mich. 417, 422 (1956) (citing *City of Bessemer v. Clowdus*, 261 Ala. 388, 394 (1954)).

In its order of September 8, 2008, the Court held that "*if* the jury finds that the Plaintiff's loss was caused by an ongoing criminal enterprise, then it (i.e., the loss) constitutes one 'occurrence' under the insurance policy." (emphasis in original). As to the"Missing Property" provision within the insurance policy, the Court also determined that the issue as to whether the Plaintiff's loss falls within this specific insurance clause is a question of fact. The Court also found that based on the evidence proffered by the Plaintiff during that stage of the litigation, the January 10, 2006 incident "may indicate that those losses which were discovered on the date following the theft have a common origin[, and that o]n this issue, the Plaintiff has offered reasonable - and presumptively, admissible - evidence in support to satisfying the physical proof requirement." However, since the entry of this order, the Defendant conducted additional discovery which focused solely on the evidence that the Plaintiff claimed to have established (i.e., the January 10, 2006 incident was only a small part of an ongoing criminal enterprise).

As a direct result of its additional discovery efforts, the Defendant submits once again that the Plaintiff (1) has failed to proffer any evidence which demonstrates that the event of January 10, 2006 was a part of an ongoing theft, and (2) is not entitled to recover its claimed loss under the "Missing Property" provision within the insurance policy.

The Plaintiff counters by arguing that *Libralter Plastics* governs the issues in this case. In *Libralter Plastics,* the court held that a jury could reasonably infer, based upon circumstantial evidence, that the plaintiff's loss was due to a theft. 199 Mich. App. at 488. The plaintiff in that

case submitted to its insurer the loss of two 400 pound injection molds, both of which were used to produce six hundred boat launchers. *Id.* Although the plaintiff had no direct evidence of a theft, the court found that based on, *inter alia*, the size of the molds and their slight mobility, a jury could reasonably infer that they had been stolen. *Id.* The court opined that (1) the plaintiff did not need to rebut every other theory which the evidence could support, (2) reasonable minds could differ as to how the molds disappeared, and (3) this was sufficient to withstand the defendant's motion for summary judgment. *Id.*

However, *Libralter Plastics* is distinguishable from the instant case. Here, the Plaintiff's circumstantial evidence (e.g., the location of the security guard during the night of January 10, 2006, the missing inventory, the size of the lumber, and its slight mobility) only helps to support its theory that the lumber was stolen on the night when Epstein surprised the thieves in their criminal activity. The Plaintiff argues that this evidence leads to the conclusion that *all* of the missing lumber can be attributed - not just to the theft of January 10, 2006 but to an ongoing criminal theft ring. Although this may be a plausible explanation as to why the lumber is missing, it is not "deducible from the evidence as a reasonable inference." *See Libralter Plastics*, 199 Mich. App. at 486. Epstein's belief that the events of January 10, 2006 amount to evidence of an ongoing criminal enterprise is mere conjecture. There is no evidence - only speculation on the part of the Plaintiff - with which to conclude that the theft which occurred on the evening of January 10, 2006 was only the last in a series of an unknown number of thefts by unknown individuals.[4] For instance, even if the Court

---

[4] A specific portion of Epstein's deposition illustrates this point precisely:

Q. Is there anything about the January 10th of 2006 presence of [the] security guard standing just inside [the] closed gate near men standing next to [a] pickup truck containing wood just outside the gate that tells you, shows you, or evidences an involvement in any prior loss of

assumed that there was sufficient evidence to prove that the security guard had assisted the individuals who stole the lumber on the evening in question, there is no similar credible evidence which suggests that he was also a part of a continuing theft ring that had been in place for an ill defined period of time in which unknown individuals participated.

Moreover, inasmuch as the Plaintiff does not have any evidence to show that the missing property (other than the lumber that Epstein observed being driven away on January 10, 2006) is attributable to an ongoing theft ring, the "Missing Property" provision within the parties' contract excludes this claimed loss from coverage. This provision of the contract is unambiguous and

---

inventory?

A. I believe it was part of a theft ring, yes.

Q. Other than your belief based upon that fact, are there any other facts that you rely upon?

A. Just my belief.

. . .

A. Right. Right. My belief based on that – you know, my belief based on the facts that there were two people, there was a lumber pile, there was a pickup truck, there was lumber in the pickup truck, those guys when they saw me, you know, took off real fast, that's my be – yes, that's my belief.

Q. But doesn't that at best show that all they did was take lumber that night? What about those facts, in other words, shows you that there was any prior loss?

A. I believe that the guard just standing there allowing it and not – is my belief – reason why there's long-time theft.

Q. That's the extent of your answer?

A. Yes.

(Epstein Dep. 67:15-68:19, Feb. 6, 2009.)

explicitly excludes from coverage (1) property whose disappearance is "unexplained or mysterious," (2) "shortage discovered on taking inventory," or (3) any other missing property for which the insured does not have "physical evidence to show what happened to the property."

The Plaintiff also submits that *Nib Foods, Inc. v. Insurance Co. of North America*, 63 Mich. App. 680 (1975) is controlling on this issue. In this case, the Michigan Court of Appeals determined that inasmuch as the plaintiff had independent evidence which established a nexus between the claimed loss and the dishonesty of an employee, inventory calculations could be used to fill the evidentiary gap. 63 Mich. App. at 683-84 (citations omitted). Thus, it is the Plaintiff's belief that its independent evidence of an ongoing theft are the events witnessed by Epstein on January 2006 and that – consistent with *Nib Foods* – it used inventory only to calculate the amount of loss.

However, the Plaintiff's reliance on *Nib Foods* is misplaced. As the Defendant correctly notes, in *Nib Foods* – where an employer attributed a loss of property to employee dishonesty – the contract at issue did not contain a "physical evidence" requirement such as the one that is found in the case before this Court. *See Nib Foods, Inc.*, 63 Mich. App. at 683. The court in *Nib Foods* interpreted the agreement as allowing the plaintiff to present "inventory or profit and loss computations . . . to help prove the amount of the loss" in which the plaintiff had proffered some independent evidence which established employee dishonesty. *Id.* at 683-84. However and unlike *Nib Foods*, there is a physical evidence requirement within the insurance policy for all missing property claims. The Plaintiff has produced independent evidence to account for the lumber that was stolen on the night of January 10, 2006. Thus, it can use inventory calculations to establish the amount of lost lumber which is attributable to the events of that evening. On the other hand, the Plaintiff has been unable to produce any other physical evidence which explains why the remaining

portion - indeed, the great bulk - of the lumber is missing. More specifically, the Plaintiff has no physical evidence to show what - if anything - happened prior to the night of January 10, 2006. Hence, the Plaintiff's situation falls squarely within the "Missing Property" exclusion of the parties' insurance contract.[5]

In conclusion, the Court holds that the Plaintiff has not proffered any evidence to show that the theft which occurred on January 10, 2006 was a part of an ongoing criminal scheme. In addition, the Court determines that the Plaintiff has failed to present any physical evidence which explains the loss of the substantial amount of lumber (save the lumber that Epstein witnessed being stolen) it claims is missing from the lumberyard. Thus, the Court holds that there is no genuine issue of a material fact regarding the exclusion of this loss from coverage based on the clear and unambiguous language of the "Missing Property" provision of the parties' contract.

IV.

Finally, inasmuch as the Court has determined that coverage of the missing lumber at issue in this case is excluded by the "Missing Property" provision, it does not need to, and will not, address the Defendant's alternative request that the Court cap the amount of damages at $100,000 pursuant to the "Employee Dishonesty" provision of the contract.

V.

---

[5] This case can be more closely analogized to *CTSC Boston, Inc.*, where fifty-seven laptop computers had disappeared and were discovered by the plaintiff upon taking inventory. 25 Fed. Appx. at 321. The insurance contract contained a "physical evidence" requirement for missing property, which the court construed as "clear and unambiguous." *Id.* at 325. Based on this contractual language, the court determined that the plaintiff did "not know when the laptops were taken . . . or by whom" and thus, had failed to provide physical evidence to show what happened to the missing laptops. *Id.* Notably, while the court acknowledged that the plaintiff's inference that the laptops were stolen "appear[ed] to be the only reasonable one," it nonetheless held that the clear policy language precluded coverage of the missing property. *Id.*

Accordingly, for the reasons that have been stated above, the Defendant's renewed motion for summary judgment is granted.

IT IS SO ORDERED.

Dated: October 22, 2009
Detroit, Michigan

S/Julian Abele Cook, Jr.
JULIAN ABELE COOK, JR.
United States District Court Judge

Certificate of Service

I hereby certify that on October 22, 2009, I electronically filed the foregoing with the Clerk of the Court using the ECF system, and I further certify that I mailed a copy to the non-ECF participant(s).

s/ Kay Doaks
Courtroom Deputy Clerk